# *Exhibit A*

# AFFIDAVIT

I, Joseph R. Hoing, being duly sworn, states as follows:

1. I am a Task Force Officer (TFO) of the Drug Enforcement Administration ("DEA"), United States Department of Justice, and have been so employed for approximately 27 years.

2. This affidavit is submitted in support of the forfeiture of the following property ("the defendant property"):

    a. *Thirty-Three Thousand Four Hundred Dollars ($33,400.00) in United States Currency; and,*

    b. *Twenty Thousand Five Hundred Thirty Dollars, Eighty-Five Cents ($20,530.85) in U.S. Funds from Checking Account #7146642801 Navy Federal Credit Union in Millington, Tennessee.*

3. The information in this affidavit comes from my own investigation, as well as information provided by other law enforcement personnel with firsthand knowledge of the facts set forth herein. Because this affidavit is submitted for the limited purpose of supporting a Verified Complaint of Forfeiture, I have not included each and every fact known to the government about the investigation described below.

4. On July 21, 2022, I received information from Special Agent (SA) Nellie Woodruff who is assigned to the Memphis office of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). SA Woodruff advised me that an individual identified as JAKKI FONTAUNE SHORTY had flown to Los Angeles from Memphis and was scheduled to fly back to Memphis on July 24, 2022. SHORTY is allegedly transporting cash from Memphis to purchase drugs and transport the drugs back to Memphis using the airlines.

5. In a cross reference of SHORTY's cell number in a law enforcement database, I found that he is connected to open DEA drug trafficking investigations in other States and is actively in

contact with targets in other federal drug trafficking cases. Though contact with SA Anthony Para of the Los Angeles, California DEA office, I also learned SHORTY is a target of DEA investigations in Los Angeles, California and Richmond, Virginia.

6. On August 10, 2022, I received information from ATF SA Woodruff that SHORTY was scheduled to depart Memphis to Las Vegas, Nevada via American Airlines. I was advised that SHORTY is a frequent flier to California and Nevada from Memphis and is a known illegal drug dealer and a source of illegal drugs being distributed in the Memphis area. SHORTY is suspected of transporting currency to the source cities in California and Nevada to purchase illegal drugs for distribution in Memphis. The MRO was able to obtain a photo of SHORTY.

7. On that same day, MRO Group Supervisor Bret Simonsen along with task force officers T'kao Parker, Ricardo Maxwell, Kye Meadows and I went to the Memphis International Airport after obtaining a driver's license photo of SHORTY in an effort to locate him once he arrived for his flight. To further assist in this investigation, I contacted a confidential source (CS) who stated SHORTY had not checked in for his flight. TFO's Simonsen, Meadows and Maxwell went to the American Airlines baggage area in an effort to locate a checked bag belonging to SHORTY. The CS observed a black male, believed to be SHORTY, walk to the American Airlines kiosk wearing a mask and attempted to purchase a ticket. The CS went to the kiosk and assisted the male identified as SHORTY in purchasing his ticket and checking his orange hard shell suitcase. The CS confirmed the identity of JAKKI FONTAUNE SHORTY with me.

8. TFO Parker and I observed SHORTY go into the TSA checkpoint and waited for him to come through. At this time, we approached SHORTY and identified ourselves as DEA task force officers by showing our credentials. I asked him if he mind answering a few questions. He stated he did not mind answering questions. We asked him to walk to a nearby bench. I told him officers

were working a drug dog in the American baggage area and the dog alerted on his checked suitcase. We then asked SHORTY if there were any reasons why the dog would alert on his suitcase. Unknown to SHORTY, DEA was not working a drug dog on this particular flight. SHORTY stated he had some marijuana inside his suitcase. I asked him if officers could have consent to search his suitcase. SHORTY gave verbal consent to the search.

### Seizure of $33,400.00 in United States Currency

9. I asked SHORTY if he was carrying any drugs or cash in his backpack. SHORTY stated he had some cash in his backpack. We asked him how much cash he was carrying. He first stated maybe $34,000.00 then stated it could be $35,000.00 or even more. We asked him for consent to search his backpack. SHORTY gave verbal consent to the search.

10. I then notified GS Simonsen that SHORTY stated he was transporting a large amount of currency and suggested his checked suitcase be brought to the Airport Police office to be searched in SHORTY'S presence.

11. SHORTY opened his backpack exposing loose cash in one of the compartments. He pointed to a black zippered pouch that contained a large amount of hundred-dollar bills. Some of the cash ($100.00 bills) was wrapped in two (2) $10,000.00 bank wrappers and some of the cash was wrapped in a $2,000.00 bank wrapper. There were also additional empty bank wrappers. None of the wrappers were dated or stamped by a banking institution. SHORTY again stated he had around $35,000.00. We located some loose cash in his backpack which was separate from the hundred-dollar bills. We asked SHORTY to count that cash. The count of the separate cash was $625.00 which SHORTY was allowed to keep. TFO Parker asked SHORTY what he was going to do with the large amount of currency. SHORTY stated he was going to hook up with a partner to

3

buy a show truck. TFO Parker asked him if he had the name of the individual, he was going to buy the truck from. SHORTY refused to identify the individual.

12. On August 15, 2022, TFOs Meadows and Parks took custody of the undetermined amount of currency and transported the currency to the Memphis Police Department (MPD) Organized Crime Unit where MPD Narcotics Detection Canine (K-9) Handler Jonathan Gross worked his narcotics detection canine (K-9) "Roxie" on the currency. MPD Officer Gross also worked "Roxie" on the area where the currency had been placed. "Roxie" alerted on the area for the odor of a controlled substance. The currency was then transported to Loomis for an official count of $33,400.00 in United States Currency.

## Seizure of $20,530.85 in United States Funds
## from Checking Account #7146642801 Navy Federal Credit Union

13. During the search of JAKKI FONTAUNE SHORTY's checked suitcase and backpack at the Memphis International Airport on August 10, 2022, TFO T'kao Parker and I, recovered a Navy Federal Credit Union deposit receipt dated August 3, 2022, in the amount of $50,000.00 showing a balance of $49,000.00 and a Navy Federal Credit Union withdrawal receipt dated August 10, 2022, in the amount of $26,000.00 showing a balance of $20,855.00.

14. On August 11, 2022, DEA Financial Investigator Joanne Overall examined the receipts seized during the above referenced airport interdiction with SHORTY and found that he had deposited and withdrawn large amounts of cash into the subject account at the Navy Federal Credit Union.

15. On that same day, I presented a State of Tennessee Notice of Seizure to the Navy Federal Credit Union for the subject account. The account balance at the time the notice was filed, effectively freezing the account, was $20,530.46.

16. A Federal Seizure Warrant was executed on September 22, 2022, on SHORTY'S EveryDay Checking Account # 7146642801 at the Navy Federal Credit Union. SHORTY is the only person listed on the account.

17. During the search of SHORTY's checked suitcase, GS Simonsen, TFO Meadows and TFO Maxwell also recovered loose marijuana and packages of marijuana that was then marked and secured. TFO Parker and I located five (5) loose Hydrocodone tablets (identified in the Physicians' Desk Reference) along with an undetermined amount of currency inside SHORTY's backpack. While collecting the Hydrocodone tablets SHORTY asked TFO Parker if he could have one of the Hydrocodone tablets. TFO Parker told SHORTY he could not have one. The search of SHORTY's suitcase and backpack also revealed the following:

    a. A U.S. Postal receipt dated 08/03/2022 showing a package shipped from 3711 Austin Peay, Memphis, Tennessee to Tallahassee, Florida; and,

    b. Two (2) open containers of Pro-Meth cough syrup.

18. While GS Simonsen and TFO Meadows were recovering the Pro-Meth syrup from SHORTY's suitcase, SHORTY asked the officers if he could have some of the syrup. The officers replied he could not have any of the syrup. SHORTY made the statement "that's alright I will just go get some more."

19. Officers asked SHORTY how many cell phones he was carrying. He stated he was carrying two phones. He provided the numbers as 901-846-XXXX and 901-585-XXXX and provided the passwords. SHORTY opened the phones and gave TFO Meadows consent to look through them. SHORTY stated 901-846-XXXX is his personal phone and is assigned password #061XXX and 901-585-XXXX is his business phone and is assigned password #09XXXX.

20. SHORTY attempted to erase one text message stored under the name "KK PP" assigned number 901-218-XXXX, before officers took the phone. I looked at the contact saved under "KK

5

PP" and saw where "KK PP" was scheduled for a flight from Memphis to Phoenix aboard Delta Airlines on August 11, 2022. A photo of the flight record shows flight # DL3824 departing Memphis and connecting to flight DL #711 with a return flight from Phoenix to Memphis on August 13, 2022 aboard DL491 connecting to flight #2583. There is not a name on the flight records. The confirmation number on the flight is #H65HRQ. The ticket numbers are # 0062332465513 and 0062332465514.

21. Through training and experience, investigators know that drug traffickers routinely purchase one-way tickets to and from locations where they conduct their criminal activities in an attempt to deceive and elude law enforcement. Drug traffickers also but not typically purchase round trip tickets when conducting their criminal activities. Investigators also know that California, among other states, is a source state, where major drug traffickers have set up massive drug distribution and marketing networks. Investigators know that many drug dealers from Memphis have flown to Las Vegas in order to hide the intent of their travels and commute via vehicle to California from Nevada to go undetected and to conduct their illegal narcotic business. Investigators have seen drug dealers transport large amounts of currency wrapped in bank wrappers that are not marked with dates or identifiable bank stamps with the intent to deceive law enforcement if they are stopped.  Even with the advent of electronic payment options such as CashApp and Venom, illegal drug trafficking remains largely a cash business because cash is still the hardest form of payment for law enforcement agents to trace and verify.

22. At the time of the currency seizure, SHORTY stated to me that he is unemployed.  ATF SA Woodruff advised during their surveillance; he was never witnessed going to a place of employment. Employment status of SHORTY is unknown.

23. Since the seizure on August 10, 2022, at the Memphis International Airport and serving the state notice of seizure on the EveryDay Checking Account # 7146642801, I received additional information from DEA SA Tiffany Corley concerning the investigation in which SHORTY emerged as a target. In March of 2019, SHORTY was seen by agents, while conducting surveillance on a primary target of a multi-kilogram distributor of methamphetamine, cocaine, and heroin investigation. The primary target of the investigation and SHORTY were seen traveling together at a known Mexican source of supply house for illegal narcotics. Moreover, telephone toll records show that SHORTY was in telephonic contact with the Mexican source of supply a total of 52 times between April 20, 2019, and May 1, 2019.

24. JAKKI FONTAUNE SHORTY has a criminal history which consists of arrests/convictions for larceny over $500.00, robbery, aggravated robbery, evading arrest, unlawful possession of a weapon, possession of cocaine/crack cocaine with intent to distribute, possession of a controlled substance, possession of marijuana, possession of narcotics paraphernalia, possession of marijuana with intent to distribute, felon in possession of a firearm, possession with intent to distribute codeine, aggravated assault against a police officer and resisting arrest.

25. No one is incarcerated and criminal charges were not filed.

26. Based on the foregoing, the currency and the funds seized from the checking account constitute proceeds traceable to the unlawful exchange of a controlled substance, and/or was used or intended for use in exchange for a controlled substance, and/or was used or intended to be used to facilitate illegal drug trafficking, and is therefore subject to forfeiture pursuant to 31 U.S.C. §5317(c)(2) and 21 U.S.C. §881(a)(6).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __18th__ day of __January__, 2023.

7

s/ Joseph R. Hoing
JOSEPH R. HOING, Task Force Officer
Drug Enforcement Administration
